# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

RAMONICA M. LUKE,        *
                                   *

      Plaintiff,          *

                                   *

         v.            *        CV 117-125

                                   *

UNIVERSITY HEALTH SERVICES,  *

INC.,                            *

      Defendant.         *

## O R D E R

Before the Court are Plaintiff and Defendant's cross motions for summary judgment.[1]  (Docs. 54, 64.)  The Clerk of Court gave Plaintiff and Defendant notice of the respective motions for summary judgment and informed the Parties of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default.  (Docs. 55, 65.) Thus, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.  The time

---

[1] Plaintiff also filed a Motion to File Response to Defendant's Reply Summary Brief. (Doc. 71.) This Court has an "unlimited reply brief policy." <u>Linthicum v. Mendakota Ins. Co.</u>, No. CV415-023, 2015 WL 4567106, at *4 n.4 (S.D. Ga. July 28, 2015). A party does not need the Court's permission to file a reply brief "within fourteen (14) calendar days of service of the opposing party's last brief." <u>See</u> LR 7.6, SDGa. Plaintiff's motion was filed the same day Defendant filed its reply (Doc. 72); thus, Plaintiff does not need the Court's permission. Because the motion includes Plaintiff's response, the Court construes it as the requested response and **DENIES AS MOOT** Plaintiff's motion to file a response (Doc. 71).

for filing materials in opposition has expired, and the motions are ripe for consideration.[2]

## I. BACKGROUND

Plaintiff Ramonica Luke, African American, began working for University Hospital in May of 2006 as a Patient Care Assistant. (Pl.'s Dep., Doc. 39, at 28:9-10, 34:15-22.) After six months, Plaintiff was moved to the laboratory where she worked as a Phlebotomist Processor until her termination in January of 2017. (Id. at 28:7-10; 34:15-25.) As a Phlebotomist, Plaintiff's responsibilities included drawing blood, processing in the lab, inputting patient demographics, answering phone calls, and filing paperwork. (Id. at 37:5-14.) Plaintiff worked the night shift from 6:00 p.m. until 6:30 a.m. (Id. at 37:16-38:13.)

### A. Work History

Plaintiff's EEOC case and current case state she was discriminated against when terminated. (EEOC Charge of Discrimination, Doc. 39, Ex. 13,[3] at 203.) Plaintiff was

---

[2] In her motion for summary judgment and response to Defendant's motion for summary judgment, Plaintiff fails to cite to evidence in the record as required by Local Rule 7.1. Furthermore, Plaintiff failed to include a statement of undisputed material facts in her motion and failed to respond to Defendant's statement of undisputed material facts as required by Local Rule 56.1. Thus, all material facts offered by Defendant in its statement of material facts are deemed admitted. Although the Court need not consider statements in her motion or briefs absent citations to evidence, the Court considers Plaintiff's arguments as best it can.

[3] Document Number 39 includes Plaintiff's Deposition and all exhibits. The exhibits were not filed as attachments to the deposition, so the Court cites the PDF page number.

recommended for termination for her alleged attendance issues and falsifying records. (Recommendation for Termination for Pl., Doc. 56-6.) The ultimate termination was approved for attendance issues alone. (Jan. 25, 2017 Letter from Ms. Mason, Doc. 59-3.) The Court focuses on facts relating to the recommendation and ultimate termination.

On May 23, 2008, Vicki Forde, a Laboratory Manager who is Caucasian, verbally counseled Plaintiff concerning her tardiness and absences. (See Aug. 26, 2008 Written Warning, Doc. 39, Ex. 7, at 185; Def.'s St. of Mat. Facts., Doc. 64-2, ¶ 11.) Having "clocked in late sixteen times and . . . called in once since [May 23, 2008]," Ms. Forde issued Plaintiff a written warning for violation of the attendance policy on August 26, 2008. (Aug. 26, 2008 Written Warning, at 185-86.)

On June 29, 2011, Ms. Forde issued Plaintiff another written warning for violating the attendance policy, which stated, "The next occurrence of any violation of policy . . . will result in a final written warning up to termination if deemed necessary." (June 29, 2011 Written Warning, Doc. 39, Ex. 1, at 161-62.) Ms. Forde documented six call-ins from Plaintiff within the twelve-month period preceding the June 29, 2011 warning: "7/3/10 – Saturday, 9/24/11 – Friday, 10/23/11 – Saturday, 1/30/11 – Sunday, 3/26/11 – Saturday, 5/20/11 – Friday (scheduled to be here at 9am and did not call until 9am)." (Id. at 161.) On the warning,

3

Plaintiff rebutted that the reason for her May 20, 2011 violation was a child care issue that she "didn't have any control over." (Id. at 162.) Regardless, Plaintiff does not dispute that she called into work that day. At the time, Plaintiff made no challenge to the correctness of any other listed day. In this case, however, Plaintiff states that Ms. Forde incorrectly noted that she called in on September 24, 2011, and October 23, 2011. (Pl.'s Resp. to Def.'s Mot. for Summ. J., Doc. 68, at 8.) Plaintiff states that these dates are months after the written warning and she worked both days. (Id.) Ms. Forde responds that writing 2011 instead of 2010 may have been a typographical error. (See Forde's Dep., Doc. 56, at 23:18-20.) Furthermore, the day of the week listed after each date aligns with that day in 2010, not 2011.

On January 8, 2014, Ms. Forde issued Plaintiff another written warning for "repeated incidents of not clocking in or out when arriving or leaving work . . . [and] repeated problems with tardies and arriving to work in a timely manner." (Jan. 8, 2014 Written Warning, Doc. 39, Ex. 8, at 187.) The January 8, 2014 warning stated, "If two additional tardies occur, you will receive a final written warning. Failure to clock in or out again will incur a final written warning." (Id.)

From January 8, 2014, to August 28, 2014, Plaintiff incurred at least forty tardies. (See Pl.'s Time Detail from 2008 to 2017, Doc. 39, Ex. 19, at 282-87.) On August 28, 2014, Ms. Forde issued

4

Plaintiff a final written warning for Plaintiff's "four call-ins and numerous tardies." (Aug. 28, 2014 Final Written Warning, Doc. 39, Ex. 9, at 189.) The warning stated, "The next occurrence of not meeting hospital policy could result in termination." (Id. at 190.) In rebuttal, Plaintiff offered an excuse that on July 9, 2014, she "had no one to get [her] son off the bus" and she already worked her forty hours for the week. (Id.)

On March 12, 2015, Ms. Forde issued Plaintiff a second final written warning. (Mar. 12, 2015 Final Written Warning, Doc. 39, Ex. 11, at 194-95.) Between the August 28, 2014 final written warning and the second final written warning, Plaintiff was tardy at least thirty times. (See Pl.'s Time Detail from 2008 to 2017, at 287-91.) In the March 12, 2015 final written warning, Ms. Forde stated, "This has been a habitual and serious problem and improvement has not been seen, therefore the next occurrence of a tardy will result in immediate termination." (Mar. 12, 2015 Final Written Warning, at 194.)

On September 9, 2016, Ms. Forde issued to Plaintiff the third final written warning, which, again, stated that "the next occurrence of a tardy will result in immediate termination." (Sept. 9, 2016 Final Written Warning, Doc 39, Ex. 12, at 196-97.) Within the twelve months preceding the September 9, 2016 warning, Plaintiff was tardy over thirty-five times. (See Pl.'s Time Detail from 2008 to 2017, at 294-302.)

5

On December 31, 2016, Plaintiff was late for work. At 6:11 p.m., Plaintiff's coworker, Amita Simmons, emailed Ms. Forde complaining that she had to stay late because Plaintiff had not arrived for her 6:00 p.m. shift. (See Dec. 31, 2016 Email from Ms. Simmons, Doc. 39, Ex. 21, at 308.) Ms. Forde reviewed Plaintiff's badge history and security footage; both showed she arrived at the lab at 6:12 p.m. on December 31, 2016. (See Pl.'s Badge History Report, Doc. 39, Ex. 20, at 307; Forde's Decl., Doc. 64-4, ¶ 10.)

Plaintiff also failed to clock in on December 31, 2016. When an employee fails to clock in, she must request a time card adjustment by filling out the "Time Card Adjustment Sheet," which includes a place for the employee's name, date, and problem resulting in the needed adjustment. (See Time Card Adjustment Sheet, Doc. 39, Ex. 18, at 246.) The Time Card Adjustment sheet is filled out in chronological order. (Forde's Decl., ¶ 6.)

The Time Card Adjustment Sheet at issue contains two entries. Line one: "Amita Simmons, 12/31/16, Forgot to clock in at 4:00 a.m." (Time Card Adjustment Sheet, at 246.) Line two: "R Luke, 12/1/16, forgot to clock in @ 6 pm." (Id.) Ms. Forde knew Plaintiff was late on December 31, 2016, given Ms. Simmons's email, the security footage, and Plaintiff's badge history.

When reviewing the time records for employees for the week of December 31, 2016, Ms. Forde remembered that Plaintiff had been

late on December 31, 2016. (Forde's Decl., ¶ 5.) Ms. Forde believed that the date written by Plaintiff on the Time Card Adjustment Sheet was a misprint and Plaintiff actually meant to sign it for December 31, 2016, rather than December 1, 2016. (Id. ¶¶ 8, 9.) Consequently, Ms. Forde believed Plaintiff falsified her time record by requesting a clock-in adjustment for December 31, 2016, of 6:00 p.m. when she did not arrive until 6:12 p.m. (Id. ¶ 11.)

## B. Termination

Ms. Forde recommended plaintiff for termination because Plaintiff was tardy on December 31, 2016, after her third final written warning, and Ms. Forde believed Plaintiff falsified her attendance record. (Id.; Recommendation for Termination for Pl.) Christa Pardue, the Laboratory Director who is Caucasian, received notice of the termination from Ms. Forde. Then, the Recommendation for Termination was sent to Vita Mason, an Employee Relations Specialist in the Human Resources ("HR") Department who is African American. (Jan. 9-11, 2017 Email Exchange, Doc. 56-7; Westbrook's Decl., Doc. 64-5, ¶ 5.)

Upon receipt of the termination, Ms. Mason reviewed Plaintiff's employment file. (Mason's Dep., Doc. 58, 11:15-19.) Ms. Mason examined the claims made by Ms. Forde and found that she could not definitively prove nor disprove that Plaintiff had falsified her time records. (Mason's Dep., at 19:2-20:5 ("[I]t

wasn't proven but it wasn't disproven either.").) Regardless, Ms. Mason found that Plaintiff was tardy on December 31, 2016, in violation of her September 6, 2016 warning, which provided that the next violation would result in immediate termination. (See Jan. 25, 2017 Letter from Ms. Mason.) Plaintiff does not challenge that she was tardy on December 31, 2016; only that she did not falsify her records. Plaintiff was also tardy on January 7, 2016, while Ms. Mason was investigating her recommended termination. (See Pl.'s Time Detail from 2008 to 2017, at 303.)

Ms. Mason submitted the Recommendation for Termination based on attendance issues to Chris Westbrook, the Vice President of HR at University Hospital who is Caucasian, for his final approval. (Westbrook's Decl., ¶ 1; Jan. 9-11, 2017 Email Exchange, Doc. 56-7; see also Mason's Dep., at 11:19-25.) Mr. Westbrook approved the termination. (Jan. 9-11, 2017 Email Exchange.) On January 11, 2017, Plaintiff received a phone call from Ms. Mason, Ms. Forde, and Ms. Pardue explaining that she was terminated. (Pl.'s Am. Br. Supp. Mot. for Summ. J., Doc. 54-2, at 2.)

## C. Plaintiff's EEOC Charge

On February 24, 2017, Plaintiff submitted an Intake Questionnaire to the U.S. Equal Employment Opportunity Commission ("EEOC"). (EEOC Intake Questionnaire, Doc. 39, Ex. 15, at 224-31.) In the Intake Questionnaire, Plaintiff states that Ms. Forde and Ms. Pardue discriminated against her by terminating her because

of her race. (Id. at 225.) On May 11, 2017, Plaintiff filed a Charge of Discrimination with the EEOC alleging the following:

> I began employment with the above-named employer on or about May 7, 2006, and I was last employed as a Lab Processor. On or about January 11, 2017, I was discharged. I am aware of similarly-situated Caucasian co-workers who were not discharged for committing similar violations.
>
> The reason given for my discharge was attendance violations.
>
> I believe that I was discriminated against due to my race, African-American, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(EEOC Charge of Discrimination, at 203.) Plaintiff states that on July 24, 2017, the EEOC issued her a Notice of Right to Sue. (Compl., Doc. 1, at 6.) On October 9, 2018, Plaintiff moved for summary judgment. On October 30, 2018, Defendant moved for the same. For the following reasons, the Court finds no issues of material fact and summary judgment for Defendant proper.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could

return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 322-23. When the movant does not carry the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Celotex Corp., 477 U.S. 317). The movant cannot meet its initial

burden by merely declaring that the non-moving party cannot meet its burden at trial. Id. at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56. The Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case. For the reasons set forth

herein, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motion for summary judgment is **DENIED**.

### III. DISCUSSION

Plaintiff's complaint alleges she was discriminated against because of her race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. Both Parties move for summary judgment. Even in the light most favorable to Plaintiff, the Court finds there are insufficient facts in the record for a reasonable juror to find Defendant terminated Plaintiff because of her race. Accordingly, the Court finds summary judgment for Defendant proper.

A plaintiff may establish a discrimination claim under Title VII using direct or circumstantial evidence. Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999). "Direct evidence of discrimination is evidence, that, 'if believed, proves the existence of a fact in issue without inference or presumption.'" Id. (quoting Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997)). "'Only the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor" qualify as direct evidence. Id. (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)).

Here, Plaintiff does not argue that Ms. Forde or any other employee of Defendant made blatant discriminatory remarks that would constitute direct evidence. On its own review, the Court finds no direct evidence. Thus, Plaintiff's case relies solely on circumstantial evidence.

When a plaintiff relies solely on circumstantial evidence to support her claim, courts employ the burden shifting framework set forth in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802-04 (1973). Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of the Title VII violation. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). "The burden of proving a prima facie case is not onerous." Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 986 (1988) (citation and internal quotation marks omitted). Success in establishing a prima facie case creates a rebuttable presumption that the employer acted illegally. McDonnell Douglas, 411 U.S. at 802. "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [termination]." Id. The employer's burden is an "exceedingly light" one of production, not persuasion, which means the employer "need only produce evidence that could allow a rational fact finder to conclude that [the plaintiff's] discharge was not made for a discriminatory reason." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998); Meeks v. Comput. Assocs. Int'l, 15 F.3d 1013, 1019 (11th

Cir. 1994). If the employer meets this burden, the burden shifts back to the plaintiff who can only avoid summary judgment by presenting "significantly probative" evidence that the proffered reasons are pretextual. Young v. Gen. Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (citation omitted).

## A. Prima Facie Case

Title VII establishes that "[i]t shall be an unlawful employment practice for an employer – (1) . . . to discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). For purposes of this Order, the Court assumes Plaintiff has established her prima facie case. The burden now shifts to Defendant to show a legitimate, nondiscriminatory reason for terminating Plaintiff.

## B. Legitimate, Nondiscriminatory Reason

Defendant states it terminated Plaintiff:

Because she violated Defendant's attendance policy when she failed to show up to work at her scheduled time and when she failed to clock in according to the policy. Plaintiff not only had a long history of failure to follow the attendance policy, but she was put on notice of the consequences if she continued to violate the policy.

(Def.'s Br. Supp. Mot. for Summ. J., Doc. 64-1, at 13.) "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs v. Plantation Patterns, 106 F.3d

14

1519, 1528 (11th Cir. 1997) (emphasis omitted) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 257 (1981)).

Defendant satisfies its burden of production. The record contains evidence documenting Plaintiff's attendance issues, multiple warnings, a coworker complaint, and a termination letter identifying attendance as the reason. This satisfies Defendant's burden of production. As such, the burden shifts back to Plaintiff to establish the proffered reason was pretextual.

## C. Pretext

To survive summary judgment, Plaintiff carries the burden to show Defendant's proffered reason was pretextual. Plaintiff fails to meet this burden. The burden requires "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action" by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Cooper v. S. Co., 390 F.3d 695, 725–26 (11th Cir. 2004) (citation omitted), overruled, in part, on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006); Combs, 106 F.3d at 1538. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [his] business judgment for that of the employer." Alvarez v. Royal Atl.

Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (quoting

Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en

banc)). If the employer satisfies the intermediate burden, "an

employee must meet that reason head on and rebut it, and [he]

cannot succeed by simply quarreling with the wisdom of that

reason." Id. at 1266 (quoting Chapman, 229 F.3d at 1030). "When

an employer asserts misconduct by an employee as the legitimate

reason for its action, the pretext inquiry focuses on the

employer's beliefs and whether the employer was dissatisfied with

the employee for nondiscriminatory reasons, 'even if mistakenly or

unfairly so.'" Siddiqui v. NetJets Aviation, Inc., 773 F. App'x

562, 564 (11th Cir. 2019) (per curiam) (quoting Alvarez, 610 F.3d

at 1266) (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466,

1470 (11th Cir. 1991)).

Turning to the facts at hand, Defendant offers evidence that

Ms. Forde recommended Plaintiff for termination as a direct result

of the following events: (1) Amita Simmons sent Ms. Forde an email

complaining of Plaintiff's tardiness, (2) that instance of

tardiness was after Plaintiff received the September 9, 2016

warning declaring that "the next occurrence of a tardy will result

in immediate termination," and (3) Ms. Forde suspected Plaintiff

of falsifying her attendance record. The Court construes

Plaintiff's response to Defendant's Motion for Summary Judgment as

proffering three main arguments: (1) Defendant was inconsistent in

16

the reasons given for terminating Plaintiff, (2) Plaintiff has comparators who were not terminated, and (3) Plaintiff was discriminated against in ways other than her termination. Plaintiff does not differentiate her arguments supporting the prima facie and pretext prongs of the McDonnell Douglas analysis.

### 1. Inconsistency in Reason for Termination

Plaintiff states, "On January 25, 2017, [Ms.] Mason wrote an unemployment response letter to the Georgia Department of Labor fabricating a different story about the incident surrounding [Plaintiff's] termination." (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 2; see Jan. 25, 2017 Letter from Ms. Mason.) Plaintiff, however, has not shown how this reveals Defendant's legitimate reason for terminating Plaintiff was pretext for discrimination based on her race.

The Court provides a recap of the undisputed, relevant facts. On January 6, 2017, Ms. Forde recommended Plaintiff's termination based on Plaintiff's attendance record, a coworker complaint, and a belief that she falsified her time card. On January 11, 2017, Plaintiff was terminated. The January 25, 2017 Letter from Ms. Mason stated that "[Plaintiff] was terminated for attendance."

Plaintiff is correct that part of Ms. Forde's reason for recommending Plaintiff's termination was falsification of her time card, yet the ultimate decision to terminate Plaintiff did not include falsification as a reason. Plaintiff, however, has not

shown that this difference proves Ms. Forde, Ms. Pardue, Ms. Mason, or Mr. Westbrook terminated Plaintiff based on her race.

As an initial matter, "contradicting the [defendant's] asserted reason alone, though doing so is highly suggestive of pretext, no longer supports an inference of unlawful discrimination." Flowers v. Troup Cty., Ga. Sch. Dist., 803 F.3d 1327, 1339 (11th Cir. 2015). Here, however, Plaintiff has not contradicted Defendant's asserted reason nor offered evidence, apart from the proffered comparators as discussed below, that supports an inference that the real reason was racial discrimination. See Siddiqui, 773 F. App'x at 565.

The Court addresses each potential decision maker in turn. As discussed below, Plaintiff does not show that Ms. Forde's reason for recommending Plaintiff for termination was pretext for discrimination. Plaintiff has also failed to offer evidence of how Ms. Pardue discriminated against Plaintiff. The ultimate decision to terminate Plaintiff came from the HR Department, specifically Ms. Mason and Mr. Westbrook (collectively, "HR Personnel"). Thus, the Court focuses on whether the HR Personnel's decision to terminate Plaintiff only for her attendance issues shows pretext for discrimination.[4]

---

[4] To the extent Plaintiff argues that the HR Personnel's finding that they could not prove falsification shows that Plaintiff did not falsify her time records, the Court addresses that argument below. See infra Section III(C)(2)(a).

First, Ms. Mason is the same race as Plaintiff, African American. This, however, is not dispositive. See Castaneda v. Partida, 430 U.S. 482, 499 (1977) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group."); see also Moore v. Shands Jacksonville Med. Ctr., Inc., No. 3:09—cv—298—J—34TEM, 2013 WL 12178164, at *10 n.23 (M.D. Fla. Oct. 18, 2013). Regardless, the evidence shows no pretext for discrimination based on Ms. Mason's decision that termination was proper. Ms. Mason reviewed the evidence that was in the files. Ms. Mason examined the claims made by Ms. Forde and found that she could not definitively prove nor disprove that Plaintiff falsified her time records. Regardless, Ms. Mason found that Plaintiff was tardy on December 31, 2016, in violation of her September 6, 2016 warning. Plaintiff does not challenge her tardiness on December 31, 2016. Ms. Mason believed termination proper even absent conclusive proof that Plaintiff falsified her time records.

Second, Mr. Westbrook only examined the information Ms. Mason provided him. (See Stipulation of Fact, Doc. 62, ¶ 1; see also Mason's Dep., at 11:15-25, 22:25-23:3.) That information showed Plaintiff violated the September 6, 2016 warning. Plaintiff did not depose Mr. Westbrook, and Plaintiff makes no argument and offers no evidence that Mr. Westbrook decided to terminate

19

Plaintiff based on her race. Rather, the evidence shows Mr. Westbrook relied on what was presented to him by Ms. Pardue. Cf. Siddiqui, 773 F. App'x at 566.

Plaintiff's argument that some of the absences should have been excused[5] does not change the fact that when looking at her records, the HR Personnel saw a history of attendance issues including that Plaintiff violated her September 9, 2016 final written warning. The HR Personnel were not in a position to determine whether the absences should have been marked excused. (See Mason's Dep., at 15:25-16:5 ("The decision was based on the information that I pulled when we came — when we went through the employment file, looked at the history of [Plaintiff's] attendance, and looked at what was going on from there. That's what we based it on, what's actually in your files.").)

2. Proffered Comparators Who Were Not Terminated

Having failed to differentiate, the Court assumes Plaintiff's argument that similarly situated individuals were not terminated applies to her case for pretext. For the following reasons, Plaintiff's use of comparator evidence to show Defendant's

---

[5] Plaintiff's argument that specific absences on their own should have been excused does not show evidence of racial discrimination. Siddiqui, 773 F. App'x at 564. Plaintiff's arguments, however, that she was treated differently than comparators outside her protected class when her absences were not excused, may be sufficient to show pretext. The Court examines those arguments in Section III(C)(3), infra.

legitimate reason was pretext for racial discrimination is inadequate for Plaintiff to survive summary judgment.

A recent Eleventh Circuit decision sheds light on when a comparator-evidence analysis is properly analyzed within the McDonnell Douglas framework. In Lewis v. City of Union City, the Eleventh Circuit held that a comparator-evidence analysis is correctly analyzed within the first step of the McDonnell Douglas framework — the prima facie stage. 918 F.3d 1213, 1223-24 (11th Cir. 2019) (en banc). Of course, Lewis does not foreclose precedent permitting the evaluation of evidence presented at the prima facie stage on the issue of pretext. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (internal citations and quotation marks omitted) ("[A]lthough the presumption of discrimination drops out of the picture once the defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether defendant's explanation is pretextual."). But a plaintiff is not permitted to rest on his prima facie case laurels at the pretext stage. The Eleventh Circuit requires something more:

> At one time under this Circuit's law, [a plaintiff] could have gotten his claims before a jury after making a prima facie case and merely contradicting the [defendant]'s proffered legitimate, nondiscriminatory reason. . . . Intervening precedent has since closed this avenue for Title VII plaintiffs. . . . The burden placed on Title VII plaintiffs to produce *additional*

> evidence suggesting discrimination after contradicting
> their employer's stated reasons is not great, but
> neither is it nothing.

*Flowers*, 803 F.3d at 1339 (emphasis added) (citations omitted).

In sum, comparator evidence is properly considered at the prima facie stage, and prima facie evidence may be considered at the pretext stage, but evidence sufficient to make out a prima facie case alone is insufficient to survive summary judgment. Therefore, at a minimum, at the pretext stage, a plaintiff must put forth evidence the employer subjectively believed the comparators in question were similarly situated and treated them differently. "Treating *different* cases differently is not discriminatory, let alone intentionally so. See Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1186 (11th Cir. 1984) ('If an employer applies a rule differently to people *it believes are differently situated*, no discriminatory intent has been shown.')." *Lewis*, 918 F.3d at 1222-23 (emphasis expanded). This reasoning aligns with traditional pretextual analysis. A plaintiff's burden at this stage is to put forth sufficient evidence that a factfinder could find the defendant's non-discriminatory reason "unworthy of credence." *Alvarez*, 610 F.3d at 1265 (citation omitted). Therefore, just as a plaintiff, to survive summary judgment, must show the defendant's nondiscriminatory reason is not entitled to credence, when relying on comparator evidence, the plaintiff must

show the defendant's belief that individuals are dissimilarly situated is unworthy of credence.

Here, Plaintiff must offer evidence to show either: (a) Ms. Forde recommended Plaintiff for termination despite believing Plaintiff was similarly situated to other individuals whom she did not recommend for termination or (b) HR Personnel approved Plaintiff's recommendation for termination despite denying such a recommendation for individuals they believed were similarly situated.

### a. Ms. Forde

Defendant offers evidence that Ms. Forde recommended Plaintiff for termination after she violated her final written warning by being tardy, a coworker complained of her tardiness, and Ms. Forde believed Plaintiff falsified her time record. Defendant shows Ms. Forde "had no reason to suspect [Plaintiff's offered comparators] of falsifying their Time Adjustment Sheets or otherwise being dishonest with their time and attendance records." (Def.'s Br. Supp. Mot. for Summ. J., at 11; Def.'s St. of Mat. Fact, ¶ 108.) Furthermore, no coworker of any proffered comparator ever emailed Ms. Forde to complain about the tardiness of those employees. (Def.'s Br. Supp. Mot. for Summ. J., at 12; Def.'s St. of Mat. Fact, ¶ 109.) Thus, Defendant has shown that, in Ms. Forde's subjective opinion, Plaintiff was in a situation dissimilar to Plaintiff's proffered comparators. It was not

23

discriminatory for Ms. Forde to treat Plaintiff differently because she believed the situation different.

Plaintiff offers no evidence that Ms. Forde subjectively believed any other employee was in a situation similar to Plaintiff when she recommended her termination. Instead, Plaintiff argues she did not falsify her time sheet. Even if she did not, "the inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." Feise v. N. Broward Hosp. Dist., 683 F. App'x 746, 753 (11th Cir. 2017) (per curiam) (quoting Alvarez, 610 F.3d at 1266); see also Champ v. Calhoun Cty. Emergency Mgmt. Agency, 226 F. App'x 908, 916 (11th Cir. 2007) (per curiam) (internal citation omitted) ("Honest reliance on inaccurate information is not discriminatory. . . . Thus, it is insufficient to merely dispute whether an incident occurred without presenting evidence that the decision-maker's belief that those incidents occurred was unworthy of credence."). Thus, Plaintiff's argument that she did not falsify her time sheet misses the mark. Plaintiff does not offer evidence that Ms. Forde's belief that Plaintiff falsified her time records was not genuinely held; thus, Ms. Forde's decision to recommend Plaintiff for termination cannot be said to be pretext for race discrimination. See Flowers, 803 F.3d at 1341 ("On-the-ground determinations of the severity of different types of workplace misconduct and how

best to deal with them are exactly the sort of judgments about which we defer to employers.").

### b. HR Personnel

Not only does Plaintiff fail to offer evidence of the HR Personnel's subjective belief, but also fails to offer evidence that the HR Personnel ever denied a recommendation for termination based on attendance issues. Thus, Plaintiff fails to show the HR Personnel's decision to approve Plaintiff's recommendation for termination was pretext for racial discrimination.

In addition, Defendant offers evidence that Chris Westbrook treated a Caucasian employee in the same manner as Plaintiff. Specifically, Defendant offers evidence that Ms. Forde recommended Angela Thomason, a Caucasian employee, for termination based on her repeated attendance issues. (Recommendation of Termination for Ms. Thomason, Doc. 64-4, Ex. A, at 4-15; Forde's Decl. ¶ 13.) Then, Ms. Thomason's termination was approved. (Stipulation of Fact, ¶ 2.) At that time, Mr. Westbrook "was the [HR] Director and was responsible for approving the recommendations for termination." (Id.) Although "Defendant's records do not reflect who approved [Ms.] Thomason's termination," Defendant stipulates that there is no reason to doubt that Mr. Westbrook approved the termination. (Id. ¶¶ 1, 3-4.)

### 3. Discriminated Against in Ways Other Than Her Termination

In Plaintiff's response to Defendant's Motion for Summary Judgment, she lists "other situations when Plaintiff was discriminated against by [Ms.] Forde." (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 7.) The acts Plaintiff lists are not discrete acts of discrimination;[6] still, they may be used "as background evidence in support of [the] timely claim" of discrimination. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). The Court notes that it is not reviewing the employer's decision as a "super-personnel committee" to determine whether the employer's actions were fair. Chapman, 229 F.3d at 1030. Instead, the Court's role is to determine whether there is a question of fact as to whether Defendant discriminated against Plaintiff because of her race. See Feise, 683 F. App'x at 753-54 (quoting Elrod, 939 F.2d at 1470) ("Absent evidence of discrimination . . . , our employment discrimination statutes do not interfere with an employer's ability to manage its personnel, 'no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers.'").

---

[6] Discrete acts of discrimination include "termination, failure to promote, denial of transfer, or refusal to hire." Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1179 (11th Cir. 2005) (internal quotation marks omitted). Each act "constitutes a separate actionable unlawful employment practice," which "starts a new clock for filing charges alleging that act." Id.

As an initial matter, Plaintiff fails to offer any evidence in support of some of her factual claims. Although the Court chose not to ignore Plaintiff's supported arguments because she failed to cite to evidence in the record,[7] the Court will not accept Plaintiff's arguments made in brief without more than a mere scintilla of evidence in the record. See FED. R. CIV. P. 56(e) ("If a party fails to properly support an assertion of fact . . . , the court may: . . . (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it . . . ."); Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013) (stating that "to defeat a motion for summary judgment, [the plaintiff] must adduce specific evidence from which a jury could reasonably find in his favor; [t]he mere existence of a scintilla of evidence in support of her position will be insufficient."). The following factual claims made in Plaintiff's response to Defendant's motion for summary judgment are unsupported in the record: (1) In August of 2009, Plaintiff was not approved to receive tuition reimbursement;[8] (2) Ms. Forde passed Plaintiff over for two

---

[7] See supra note 2.

[8] Plaintiff, in her deposition, stated she applied for but was denied tuition reimbursement. (Pl.'s Dep., at 130:5-12.) To show the denial was discriminatory, Plaintiff writes, in her brief, Jennifer Campbell, a Caucasian employee, applied for and received tuition reimbursement. However, in her deposition, when asked whether Ms. Campbell received the tuition reimbursement — which is the only record mention of this event — Plaintiff responded, "I have no idea." (Id. at 130:24-131:2.)

administrative job opportunities in 2014;[9] and (3) Ms. Forde did not turn in Plaintiff's name to receive a ten-year appreciation award in June of 2016.  (See Pl.'s Resp. to Def.'s Mot. for Summ. J., at 9-11.)  Thus, the Court need not examine whether these unsupported facts support Plaintiff's overall claim of discrimination.

The remaining "other ways" Plaintiff claims she was discriminated against are: (a) In July of 2009, Vicki Forde failed to excuse Plaintiff's absence because of her grandmother's death; (b) On May 20, 2011, Ms. Forde failed to excuse Plaintiff's absence occasioned by her son's day care flooding; (c) Ms. Forde incorrectly documented two of Plaintiff's six tardies on her June 29, 2011 warning; (d) Ms. Forde did not excuse any of Plaintiff's absences but Jennifer Campbell was given days off to care for a sick dog; and (e) Before Ms. Forde recommended Plaintiff for termination, Plaintiff was not placed on administrative leave, allowed to file a grievance, or provided an investigation.  (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 2-3, 7-9.)  Despite these factual claims' limited support in the record, the Court will address each in turn.

---

[9] When deposed, Plaintiff agreed that in her response to Defendant's interrogatories, she stated she applied for two jobs that were both given to less qualified Caucasian females with no laboratory experience.  (Pl.'s Dep., at 128:17-129:19.)  Plaintiff, however, provided nothing more to the Court than the names of the females — one of which she only provided the first name.

### a. Absence Because of Grandmother's Death

According to Plaintiff, Ms. Forde did not excuse Plaintiff's absence because of her grandmother's death. Ms. Forde, however, followed the bereavement policy, which allows employees to take excused time off for the death of only immediate family members. (See Mason's Dep., at 4:23–5:6.) Grandparents are not immediate family members. (Id. at 5:4–6; see B-04 Bereavement Leave Policy, Doc. 54-2, at 25 ("Immediate family is defined as spouse, child, sibling, parent or legal guardian.").) To show racial discrimination, Plaintiff must show that, despite Ms. Forde following the policy, her actions were nevertheless discriminatory. Plaintiff may show this by offering evidence that Ms. Forde treated comparable employees differently. Plaintiff states that Laura Glossom, a Caucasian employee, was provided bereavement time when her father-in-law died. (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 9.) Plaintiff, however, fails to introduce evidence supporting this statement.[10]

### b. May 20, 2011 Call In

On May 20, 2011, Plaintiff states she called in but a Caucasian coworker, Janet Neal, told Ms. Forde Plaintiff was a "no call, no show," thereby Plaintiff "was falsely accused by Janet

---

[10] Plaintiff states, "According to Laura Glossom's time records, she was approved for bereavement leave for three days in December of 2016 follow [sic] the death of her father-in-law." (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 9.) In reviewing Laura Glossom's time records (Doc. 56-21), the Court is unable to verify Plaintiff's claim.

Neal." (Id. at 7.) Even if this incident raised an issue of fact as to discrimination, it is discrimination by a coworker, and whether a coworker has discriminatory intent is irrelevant. See Oliver v. TECO Energy, Inc., No. 8:12-cv-2117-T-33TBM, 2013 WL 6836421, at *10 (M.D. Fla. Dec. 26, 2013) (coworkers could have been "lying through their teeth" when reporting misconduct, but that is no evidence that the decision maker's reason for terminating the plaintiff was pretextual (quoting Elrod, 939 F.2d at 1470)).

### c. June 29, 2011 Warning

Plaintiff argues that in her June 29, 2011 warning, Ms. Forde incorrectly documented her as calling in on September 24, 2011, and October 23, 2011. As discussed in Section I, *supra*, Defendant states that this was a typographical error by Ms. Forde; the correct year was 2010, not 2011. Regardless, Plaintiff has not shown how adding two call-in dates to the warning raises an inference that Ms. Forde discriminated against Plaintiff because of her race. At most, this shows Ms. Forde treated Plaintiff unfairly. At the pretext stage, however, Plaintiff must offer evidence at least raising an inference that Plaintiff was discriminated against specifically because of her race.

### d. Comparison with Jennifer Campbell

Plaintiff states that Ms. Forde never excused any of Plaintiff's absences, but she once did for Jennifer Campbell, a

Caucasian employee, to care for her sick dog. (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 9; Pl.'s Dep., at 78:18-19.) Plaintiff offers no support in the record for this contention, and the Court finds no evidence in the record to support that Ms. Campbell was provided an excused absence to care for her sick dog.

### e. Administrative Leave

Plaintiff states she was not placed on administrative leave, investigated, or given the opportunity to file a grievance before termination. (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 2-3.) The progressive performance management policy Plaintiff cites allows for "discharge without progressive performance actions," i.e. "immediate discharge" when there is a "violation of [University Hospital] Policies or the Standards of Behavior during the twelve months following a 'final written warning.'" Here, Plaintiff violated her third final written warning and was immediately discharged in accordance with University Hospital's policy.

Plaintiff attempts to compare her treatment to that of Laura Glossman who, according to Plaintiff, was "placed on administrative leave, her allegations were properly investigated, and she was given the opportunity to file a grievance." (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 3.) Plaintiff offers no evidence that Laura Glossom received a final written warning stating that another violation would result in immediate

termination. At any rate, Plaintiff offers no evidence that Laura Glossom was placed on administrative leave or, if so, why she was placed on administrative leave. Evidence in the record shows that administrative leave is optional and, within Plaintiff's department, reserved for situations when patient safety is a concern. (Pardue's Dep., Doc. 59, at 18:7-17; A-25 Progressive Performance Management Policy, Doc. 54-2, at 29 ("While incidents of serious misconduct are under review by management, it may be appropriate for the supervisor to place the employee in question on administrative leave pending a final determination regarding a specific incident.").) In addition, those who are immediately terminated are unable to file grievances, although it seems that Plaintiff was able to file grievances in the past if she so desired. (See Def.'s St. of Mat. Facts, ¶ 61; A-25 Progressive Performance Management Policy, at 29 (The grievance mechanism "is available to employees seeking further review of actions (other than terminations) under this policy.").) Lastly, Ms. Mason did investigate Ms. Forde's Recommendation for Termination, and it is unclear what further investigation Plaintiff complains of not receiving. Even if Defendant's actions violated hospital policy, Plaintiff has offered no evidence to raise an inference that her race was the reason.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 64) is **GRANTED**, and Plaintiff's Motion for summary Judgment (Doc. 54) is **DENIED**. Accordingly, the Clerk is directed to **ENTER JUDGMENT** in favor of Defendant on all of Plaintiff's claims, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of September, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA